IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH BARRIOS,

    Plaintiff,

v.                                                                              Civ. No. 17-56 KK/JHR

ALBUQUERQUE BERNALILLO
COUNTY WATER UTILITY
AUTHORITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on the *Motion for Summary Judgment* filed on September 14, 2017, by Defendant Albuquerque Bernalillo County Water Utility Authority. (Doc. 30.) In its Motion, Defendant seeks summary judgment as to Count I (insofar as it pertains to discrete acts of alleged age discrimination), Count II, and Count III of Plaintiff Joseph Barrios' *Complaint for Age Discrimination Pursuant to the Civil Rights Act of 1964, as amended, the New Mexico Human Rights Act, Breach of Contract, and Retaliation*. (Doc. 1-1.) Plaintiff filed a Response to Defendant's Motion on October 19, 2017. (Doc. 38.) Defendant filed a Reply on November 9, 2017. (Doc. 45.) The Court, having considered the parties' submissions, the relevant law, and the record concludes that Defendant's Motion is well taken, and shall be granted as to the relief requested therein. Additionally, the Court is inclined to grant summary judgment in Defendant's favor in regard to Plaintiff's age-related hostile work environment claim as to which Defendant did not move for summary judgment; however, the Court shall first permit both parties to submit supplemental briefing on this issue.

**I.**     **Procedural and Factual Background**

Before setting forth the undisputed material facts that bear on the issues in this case, the Court addresses Plaintiff's failure to submit a Response to Defendant's Motion that conforms with the Local Rules of Civil Procedure. In this district, summary judgment is governed, procedurally, by Local Rule 56 which provides, in part, that a response to a motion for summary judgment

> must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the [motion for summary judgment] will be deemed undisputed unless specifically controverted. The Response may set forth additional facts other than those which respond to the [motion for summary judgment] which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M. LR-Civ. 56(b). Far from being a mere technicality, Plaintiff's failure to abide by this Rule substantively affects the efficacy of his Response.

Rather than enumerating the facts as to which there is a dispute and providing a citation to particular facts in the record demonstrating the existence of a genuine dispute, Plaintiff attached his affidavit as an exhibit to the Response. (Doc. 38-1.) Plaintiff "organized [the] affidavit by first reciting [every] allegation of fact made by the Defendants, followed by whether [he] dispute[s] that allegation, and if [he does] a statement of the facts that [he relies] on in disputing it." (Doc. 38-1 at 1.) The result of Plaintiff's endeavor to do what should have been done on his behalf by his counsel is that the vast majority of the facts that Plaintiff contends are "disputed" or "partially disputed" are not specifically controverted.[1]

---

[1] Plaintiff's counsel has been previously admonished in this district for failing to abide by Local Rule 56. *See* Civ. No. 16-120-RB-KK (Doc. 35 at 4) (stating that the "[p]laintiff's attorney, Mr. Santiago Juarez, fails to follow Local Rule 56 in the Response" by responding to the defendant's facts with "conclusory, repetitive, argumentative statements" rather than statements of facts or citations to the record; and stating, further, that "it is counsel's job to

With few exceptions (which are specifically mentioned in this Opinion where it is contextually appropriate), Plaintiff's designation of a fact set forth in Defendant's Motion as "disputed" or "partially disputed" is variously accompanied by (1) an assertion unrelated to the at-issue statement of fact, (2) a brief exposition of Plaintiff's beliefs and feelings about, or ancillary to, the at-issue statement of fact, and (3) citations to the record that are unrelated to the assertions that they are intended to support. Since a genuine dispute of material fact is not created merely by labeling a fact "disputed" or "partially disputed," except where they are actually controverted by evidence in the record, the Court relies on Defendant's undisputed material facts regardless of these designations.

The following basic facts are undisputed.[2] Plaintiff is employed by Defendant, the Albuquerque Bernalillo County Water Utility Authority. (Doc. 38-1 at ¶ 1.) His date of birth is September 8, 1960. (Doc. 38-1 at ¶ 2.) Plaintiff applied and was not selected for job promotions in the years 2010, 2012, 2013, 2014, 2015, and 2016. (Doc. 38-1 ¶¶ 3, 9, 18, 22, 30, 40.) In September 2015, and again in August 2016, Plaintiff filed a "charge of discrimination" with the EEOC, claiming age discrimination and retaliation. (Doc. 30-2; Doc. 30-3.) The EEOC investigated the 2015 charge and determined that Defendant's reasons for not promoting Plaintiff (*i.e.*, his "lack of qualifications and his behavior") were legitimate and non-discriminatory. (Doc. 30-8 at 3.) The EEOC issued a "notice of right to sue" to Plaintiff in regard to that charge. (Doc. 38-6.) The parties did not attach documents pertaining to the result of the 2016 EEOC charge to their respective summary judgment briefs.

---

competently advocate for his client and not the Court's, where Mr. Juarez fails to specifically controvert Defendant's facts, the Court deems those facts undisputed").

[2] Additional undisputed facts are presented in the body of this Opinion in the context of the claims to which they relate.

In November 2016, Plaintiff filed, in the Second Judicial District, County of Bernalillo, State of New Mexico, a Complaint for Age Discrimination Pursuant to the Civil Rights Act of 1964, as amended, The New Mexico Human Rights Act, Breach of Contract and Retaliation. (Doc. 1-1.) In January, 2017, Defendant removed the case to this Court on the basis of federal question jurisdiction. (Doc. 1-2.) In February, 2017, the parties consented to proceed before the undersigned. (Doc. 7.)

Plaintiff's Complaint is comprised of three counts. In Count I, Plaintiff claims that he was subjected to "systematic[] and persistent[]" age discrimination, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*[3] (Doc. 1-1 at ¶ 25). The Court construes Count I as raising an age discrimination claim related to several "discrete acts" as well as an age-related hostile work environment claim. In Count II, "violation of contract," Plaintiff claims that Defendant held him in "substandard jobs" and that he has been "marginalized in his work" in violation of his employment contract. (Doc. 1-1 at ¶ 28.) In Count III, Plaintiff states a claim of "retaliation," contrary the New Mexico Human Rights Act (NMHRA), NMSA 1978, Section 28-1-1 *et seq.* (Doc. 1-1 at ¶ 29.) Defendant argues that it is entitled to judgment as a matter of law as to each of these claims; however, insofar as Defendant has not directly addressed Plaintiff's age-related hostile work environment claim, Defendant and Plaintiff shall be afforded an opportunity to address the viability of this claim before the Court determines whether to grant summary judgment related thereto. (Doc. 30.)

## II. Analysis

---

[3] In considering Count I, the Court overlooks Plaintiff's erroneous invocation of Title VII of the Civil Rights Act of 1964, as a vehicle for his age-discrimination claim. Instead, the Court shall consider the standards governing a claim brought pursuant to the ADEA. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995) (recognizing that the ADEA, which prohibits age discrimination, and Title VII, which prohibits discrimination based upon race, color, sex, national origin and religion, were enacted as part of a "wide[] statutory scheme to protect employees in the workplace nationwide"

A.  **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); *see* Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if evidence is such that a reasonable jury could return a verdict for the nonmoving party." *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and its according entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence" that demonstrate a genuine dispute as to material facts. *Id.* at 671; *see MacKenzie*, 414 at 1273 ("Unsupported conclusory allegations . . . do not create an issue of fact."); *Santana v. City & Cty. of Denver*, 488 F.3d 860, 866 (10th Cir. 2007) ("[A]n employee's opinion about his or her qualifications does not give rise to a material factual dispute."). If the nonmovant succeeds in demonstrating a "genuine dispute" as to material facts, the Court views the facts in the light most favorable to him. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B.  **Plaintiff's Age Discrimination Claim**

1. **Overview of the Governing Law**

The ADEA prohibits an employer from discharging or demoting an employee, or discriminating against an employee in matters of compensation, terms, conditions or privileges of employment, because of the employee's age. 29 U.S.C. § 623(a); NMSA 1978, § 28-1-7(A). The prohibitions in the ADEA are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

Prior to filing an ADEA claim, a plaintiff is required to exhaust his administrative remedies by filing an EEOC charge within 300 days of the employer's allegedly discriminatory action. 42 U.S.C. § 2000e-5(e)(1); *Benton v. Town of S. Fork & Police Dep't*, 553 Fed.Appx. 772, 779 (10th Cir. 2014). "[T]he exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under . . . the ADEA." *Logsdon v. Turbines, Inc.*, 399 Fed. Appx. 376, 378 (10th Cir. 2010). Each discrete incident of discrimination (including each instance of failure to promote) constitutes "its own unlawful employment practice for which administrative remedies must be exhausted." *Id.*

Plaintiff alleges that over a five-year time period,[4] he was, in his own words, "passed over for five promotions" and concomitant pay increases in favor of younger, less qualified applicants. (Doc. 30-2; Doc. 38 at 7.) He also alleges that he was subjected to age discrimination in the form of a pay disparity because a younger worker doing "the same or similar work as Plaintiff" received higher compensation. (Doc. 1-1 at ¶ 16.) Defendant argues that except for two promotion decisions, occurring in 2015 and 2016, respectively, the Court is precluded from considering Plaintiff's age discrimination claim because, as to the remaining

---

[4] The hiring decisions upon which Plaintiff bases his claim actually spans six years—including promotions for which he was not selected, in the years 2010 through 2016. (Doc. 1-1 at ¶¶ 7, 8, 11, 15, 20.)

failure-to-promote decisions and as to pay disparity claim, Plaintiff failed to exhaust his administrative remedies. (Doc. 30 at 14-15, 20.)

The Court concludes that, as to the discrete acts of discrimination alleged to have occurred in 2010 through 2014, Plaintiff failed to timely exhaust his administrative remedies. As such, the issue whether those acts violated the ADEA is not properly before the Court. As to the discrete acts of discrimination alleged to have occurred in 2015 and 2016, respectively, the Court concludes that Defendant is entitled to summary judgment on the ground that Plaintiff has failed to make a prima facie showing of age discrimination as required by law. Finally, insofar as Plaintiff's Complaint raises an age-related hostile work environment claim, the Court is inclined to grant summary judgment in Defendant's favor on the ground that the undisputed material facts do not give rise to a genuine issue whether Plaintiff was subjected to a hostile work environment based upon his age. However, because Defendant has not moved for summary judgment as to Plaintiff's hostile work environment theory, the Court shall give the parties the opportunity to present supplemental briefing on this issue.

**2. Plaintiff Did Not Exhaust His Administrative Remedies as to Defendant's Failure to Promote Him in 2010 through 2014**

In regard to the instances, in 2010, 2012, 2013, and 2014, in which Plaintiff claims to have been deprived of a promotion for reasons that were discriminatory, it is undisputed that Plaintiff did not file a timely EEOC charge. (Doc. 30 at ¶¶ 3-4; Doc. 38-1 at ¶¶ 3-4; Doc. 30 at ¶¶ 9, 17; Doc. 38-1 at ¶¶ 9, 17; Doc. 30 at ¶¶ 18-21; Doc. 38-1 at ¶¶ 18-21; Doc. 30 at ¶¶ 22, 29; Doc. 38-1 at ¶¶ 22, 29; Doc. 30-2.) This applies, as well, to Plaintiff's age-discrimination claim arising from an alleged pay disparity between himself and a younger employee—which issue Plaintiff did not raise before the EEOC. (Doc. 30 at ¶ 51; Doc. 38-1 ¶ 50; Doc. 30-2; Doc. 30-3.) In response to Defendant's well-founded argument that Plaintiff is thereby precluded from

relying on the alleged acts of discrimination that occurred between the years of 2010-2014, Plaintiff contends that he is relying on a "continuing violation" theory of discrimination. (Doc. 38 at 4-5.) As to discrete discriminatory acts, such as instances of failure to promote, this theory is not legally viable.[5]

The continuing-violation theory, pursuant to which "a judicial complaint could encompass any discrimination like or reasonably related to the allegations of the EEOC charge," was abrogated in 2002 by the Supreme Court's decision in *National Railroad Passenger Corporation v. Morgan*. *Eke v. Caridian BCT, Inc.*, 490 F. App'x 156, 162 (10th Cir. 2012); *see Nat'l R.R. Passenger Corp., v. Morgan*, 536 U.S. 101, 113-114 (2002) (holding that each instance of a discrete act, such as failure to promote, "starts a new clock for filing charges alleging that act"; and acts that occurred outside of the 300-day EEOC charging period are not actionable); *see also Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (stating that the Tenth Circuit has "unambiguously recognized *Morgan* as rejecting application of the 'continuing violation' theory" as to claims of discrimination for discrete acts). Accordingly, Plaintiff's invocation of the "continuing violation" theory in the context of the alleged discrete discriminatory actions is unavailing. Since Plaintiff did not timely exhaust his administrative remedies as to the allegedly discriminatory acts that occurred between 2010 and 2014, nor did he exhaust his administrative remedies as to his claim of disparate compensation, these claims are not properly before the Court and will not be considered further. *Logsdon*, 399 F. App'x. at 378 (recognizing a jurisdictional bar to ADEA claims as to which the plaintiff has failed to exhaust administrative remedies).

---

[5] *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-18 (2002) (recognizing, in the context of Title VII, a distinction between hostile environment claims, as to which a continuing violation theory is viable, and claims of discrimination based upon discrete acts, as to which a continuing violation theory is not viable).

### 3. **Plaintiff Has Not Established a Prima Facie Case of Age Discrimination as to Defendant's Failure to Promote Him in 2015 or 2016**

In evaluating a failure-to-promote claim under the ADEA, our Tenth Circuit, like other circuit courts, apply a variant of the basic evidentiary framework set forth by our Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to analyze claims brought under Title VII. *MacKenzie*, 414 F.3d at 1277-78 (stating that "a failure-to-promote claim under the ADEA" is analyzed pursuant to the "now-familiar three-step burden-shifting analysis mandated by *McDonnell Douglas*"); *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming, without deciding, that circuit courts' application of the Title VII rule established in *McDonnell Douglas* to claims brought under ADEA is appropriate); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278-79 (10th Cir. 2010) (recognizing that although *Gross*, 557 U.S. at 174, in which our Supreme Court noted that it "has never held that [the *McDonnell Douglas*] burden-shifting framework applies to ADEA claims[,]" "created some uncertainty regarding burden-shifting in the ADEA context" the Tenth Circuit will nevertheless continue to apply *McDonnell Douglas* to ADEA claims).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer who then is required "to articulate some legitimate, nondiscriminatory reason" for refusing to hire the plaintiff. *Id.* at 802-03. If the employer is able to articulate such a reason, the burden shifts back to the plaintiff who, in order to prevail in his claim, must demonstrate that the employer's stated reason for refusing to hire him "was in fact pretext." *Id.* at 804.

"To prove a prima facie case of age discrimination, a plaintiff must show" that (1) he "is a member of the class of people protected by the ADEA"; (2) he "suffered an adverse employment

action"; (3) he "was qualified for the position at issue"; and (4) he was treated less favorably than someone who was substantially younger. *Jones*, 617 F.3d at 1279 (alteration omitted); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (clarifying that the fourth element cannot be satisfied by showing that an ADEA plaintiff was replaced by someone outside of the "class" protected by the ADEA—namely persons younger than 40; instead, in the age discrimination context, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class"). If the plaintiff satisfies each of these elements, the burden shifts to the defendant to demonstrate a "legitimate nondiscriminatory reason" for its actions. *Sanchez*, 164 F.3d at 531. "The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection[,]" *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981), "including lack of qualifications and an absence of a vacancy." *Beams v. Norton*, 256 F.Supp.2d 1203, 1213-14 (D. Kan. 2003); *see Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358 n.44 (recognizing that the *McDonnell Douglas* test is important because it requires that the plaintiff alleging discrimination must carry the initial burden of offering evidence that "his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought").

The following facts material to Plaintiff's claim of discrimination arising out of Defendant's decision, in 2015, not to promote him are undisputed. In February, 2015, Plaintiff applied for an "Operations/Maintenance superintendent" position. (Doc. 30 at ¶ 30; Doc. 1-1 at ¶ 15; Doc. 38-1 at ¶ 30; Doc. 30-2; Doc. 30-22.) Among the minimum qualifications for that

position was a requirement that the applicant have two years of supervisory experience. (Doc. 30-13) Plaintiff, who did not have two years of supervisory experience,[6] was not selected for an interview. (Doc. 30 at ¶ 34; Doc. 30-12; Doc. 30-14.) The applicant who was hired for the position was younger than Plaintiff but, unlike Plaintiff, the younger applicant was possessed of the requisite supervisory experience and satisfied all of the minimum qualifications required for the job. (Doc. 30 at ¶¶ 2, 35-36; Doc. 38-1 at ¶¶ 2, 35-36; Doc. 30-12; Doc. 30-15.)

As to Defendant's decision, in 2016, to not promote Plaintiff, the following material facts are undisputed. In October, 2016, Defendant promoted one of its employees to the position of Electrical Engineer/SCADA, a position for which Plaintiff claims to be qualified. (Doc. 1-1 at ¶ 20; Doc. 30 ¶ 45; Doc. 38-1 ¶ 45.) Although Plaintiff had applied for the position in November 2013 and in April, 2016, those listings had remained unfilled, and when the position was posted again, and then ultimately filled in October, 2016, Plaintiff, who did not see the job listing, did not apply for the position. (Doc. 30-4 at 29; Doc. 38-1 ¶ 46.) The person selected for the promotion was older than Plaintiff. (Doc. 38-1 ¶¶ 47-48.)

As noted earlier, to prevail on a claim of age discrimination under the ADEA, the plaintiff is required to establish that, as a member of the class of people protected by the ADEA, he suffered an adverse employment action in regard to a position for which he was qualified, and that others, who were substantially younger, were treated more favorably than him. *Jones*, 617 F.3d at 1279 (alteration omitted); *O'Connor*, 517 U.S. at 312-13. Plaintiff, who is older than forty, is a member of the class protected by the ADEA; and, insofar as he was not promoted, he

---

[6] Plaintiff's contention that he did, in fact, meet the minimum qualifications for the Operations/Maintenance superintendent position is based on an email correspondence with Human Resources Analyst, Erica Jaramillo. (Doc. 38-1 at ¶ 32; Doc. 38-23 at 1; Doc. 45-3 at ¶ 2.) In the correspondence, Ms. Jaramillo represented to Plaintiff that he "did meet the minimum qualifications for the position." (Doc. 38-23 at 1) In an affidavit attached to Defendant's Reply, Ms. Jaramillo states that this was a mistaken representation derived from information that Plaintiff provided in his application for the position. Having reviewed the matter of Plaintiff's qualifications further, Ms. Jaramillo concluded that Plaintiff "did not have the direct supervisory experience required for" the position, and, therefore, he did not in fact meet the minimum qualifications. (Doc. 45-3 at ¶¶ 9, 14-15.)

11

has demonstrated an "adverse employment action." *See* 29 U.S.C § 631(a) (including within the purview those protected by the ADEA "individuals who are at least 40 years of age"); *Jones*, 617 F.3d at 1279 (stating that the "adverse employment action" element is satisfied by "failing to promote"). These facts notwithstanding, Plaintiff cannot, under the undisputed facts material to the remaining elements, make a prima facie case of age discrimination as to either the 2015 position or the 2016 position. *Celotex Corp.*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

As to the 2015 Operations/Maintenance superintendent position, Plaintiff, who lacked supervisory experience did not meet the minimum qualifications for the job. *See Jones*, 617 F.3d at 1279 (stating that the plaintiff must demonstrate an adverse employment action regarding a position for which he was *qualified*). On the other hand, the person who was selected for the position met each of the minimum qualifications for the position. *See Cone v. Longmount United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994) ("To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated."). Similarly, as to the October 2016 Electrical Engineer/SCADA position that Plaintiff did not even apply for, this, and the fact that the person who received the promotion was older than Plaintiff precludes Plaintiff's age discrimination claim as to that action. *Jones*, 617 F.3d at 1279; *see O'Connor*, 517 U.S. at 313 (stating that evidence that someone "substantially younger" than the plaintiff was treated more favorably may indicate age discrimination).

In sum, Plaintiff has failed to establish a prima facie case of age discrimination pursuant to the ADEA arising out of Defendants' decisions in 2015 and in 2016 to not promote him. *Sanchez*, 164 F.3d at 531 (stating that to succeed in a claim under the ADEA, the plaintiff must

carry his initial burden of proving a prima facie case of age discrimination). Accordingly, insofar as Count I is premised on these discrete failure-to-promote decisions, Defendant is entitled to summary judgment on that count.

### 4. **Plaintiff's Hostile Work Environment Theory**

In addition to a claim of age discrimination arising out of the discrete acts already discussed, Count I of the Complaint also raises an age-related hostile work environment claim. (Doc. 1-1 at ¶¶ 8, 10-16, 18, 20-21, 25-26.) In that regard, Plaintiff claims to have been subjected to disparaging and antagonistic comments related to his age—including having been called "grandpa" and "old school" by colleagues and superiors which, according to Plaintiff, demonstrates a pattern of age-related discrimination. (Doc. 38 at 6; Doc. 38-1 at 6-7; Doc. 38-5 at 1; Doc. 38-18 at 2.)

"For [an age-based] hostile environment claim to survive . . . a plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie*, 414 F.3d at 1280. "To evaluate whether a working environment is sufficiently hostile or abusive, [the Court] examine[s] all [of] the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Id.* Additionally, "the environment must be both subjectively and objectively hostile or abusive." *Id.* In undertaking this analysis the Court "filter[s] out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of age-

related jokes, . . . occasional teasing[,]" "offhand comments, and isolated incidents" so that the ADEA does "not become trivialized as a civility code." *Id.*

Pursuant to Rule 56(f)(2) of the Federal Rules of Civil Procedure the Court may grant a motion for summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond. The Court is inclined to grant summary judgment in favor of Defendant as to Plaintiff's age-related hostile work environment claim on the ground that the undisputed material facts do not create a genuine issue such that a reasonable jury could find that Plaintiff was subjected to a hostile work environment under the governing standards. Having thus been notified of the Court's inclination, the parties may submit supplemental briefing on this issue pursuant to a schedule set forth in the "Conclusion" of this Opinion.

C. **Plaintiff's "Violation of Contract" Claim**

Plaintiff's "violation of contract" claim is premised on the theory that Plaintiff "has been held in substandard jobs and has been marginalized in his work in violation of the policies and procedures established by the Defendant as part of his contract of employment." (Doc. 1-1 at ¶ 28.) The "contract of employment" to which Plaintiff's *Complaint* ostensibly refers is the "Collective Bargaining Agreement between the Albuquerque Bernalillo County Water Utility Authority and AFSCME Local 3022, Council 18" (Doc. 30-20; Doc. 38-1 at ¶ 64.)[7]

---

[7] Plaintiff's *Complaint* contains an allegation that "[i]n June of 2011 Defendant incorrectly applied Classification and Compensation Study and downgraded Plaintiff to SCADA System Specialist." Defendant construes this allegation as somehow stating a claim that Defendant breached an implied contract arising out of, or related to, the study and contends, accordingly, that the claim fails because Plaintiff did not identify "any specific representation made concerning the study that would constitute an enforceable contract." (Doc. 1-1 at ¶¶ 6-7; Doc. 30 at 25.) Because Plaintiff fails to respond to Defendant's argument in this regard, the Court assumes, but does not decide, that Defendant has correctly construed the allegation. And, insofar as Plaintiff has failed to demonstrate the existence of a contract—implied or otherwise—arising out of the study, the Court agrees with Defendant that any purported breach-of-contract claim premised thereon must fail. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 780 (N.M. 1993) ("A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.").

The following facts, material to Plaintiff's contract claim, are undisputed. The Collective Bargaining Agreement contains a mandatory multi-step grievance procedure applicable to all covered employees (including Plaintiff). (Doc. 38-1 at ¶ 64; Doc. 30-20 at p. 2-6.) In relevant part, "grievance" is defined in the Collective Bargaining Agreement as "a complaint that alleges violations of one or more expressed provisions of [the] Agreement or Authority Policy, Rules and Regulations, Administrative Directives[.]" (Doc. 30-20 at p. 2 (¶ B).) As a final step in the grievance procedure, an aggrieved employee who is subject to an unfavorable decision by an arbitrator or a hearing officer may file an appeal of that decision in the district court. (Doc. 30-20 at p. 3- 6 (¶ L).) Plaintiff has filed "multiple grievances" and, with the exception of those that are still pending, he has, in his own words, "won all of them, more or less." (Doc. 38-1 at ¶ 66; Doc. 30-4 at p. 31-32.) Plaintiff does not allege in his *Complaint*, nor does he otherwise argue, that the present lawsuit constitutes an appeal pursuant to the grievance procedure set forth in the Collective Bargaining Agreement. (Doc. 30 at p. 24.)

Defendant argues that it is entitled to summary judgment as to Plaintiff's breach of contract claim because Plaintiff has "not identified any potential breach of the Collective Bargaining Agreement . . . not within the scope of proceedings already initiated and/or concluded, which has potentially caused him to suffer any damages," nor, as to any such claim, has Plaintiff exhausted the requisite grievance procedure. (Doc. 30 at p. 24-25.) By failing to respond to Defendant's argument in this regard, Plaintiff has apparently conceded the issue. *See* D.N.M. LR-Civ. 7.1(b) (stating that failure to respond in opposition to a motion constitutes consent to grant it). Although Plaintiff's failure to respond to this argument does not, standing alone, constitute grounds for granting summary judgment as to the breach of contract claim, the Court concludes that Defendant's argument is well founded. *See Reed v. Bennett*, 312 F.3d

1190, 1196 (10th Cir. 2002) (stating that when a party fails to respond to a motion for summary judgment, the district court can properly grant the motion only "if the motion demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law").

Under New Mexico law, an individual employee who is subject to a collective bargaining agreement "must show that he has exhausted the grievance procedures provided by the agreement as a condition to his right to maintain an action in court." *Jones v. Int'l Union of Operating Eng'rs*, 72 N.M. 322, 236 (N.M. 1963); *Luginbuhl v. City of Gallup*, 302 P.3d 751, 760 (N.M. Ct. App. 2013) (same); *see also Lucero v. Bd. of Regents of Univ. of New Mexico*, 2012-NMCA-055, ¶ 10, 278 P.3d 1043, 1045 (N.M. Ct. App. 2012) ("[A]n employee must exhaust grievance procedures in an employee handbook or manual before filing claims against the employer for breach of contract."). Here, it is undisputed that Plaintiff is subject to the Collective Bargaining Agreement which provides a grievance procedure by which an employee must attempt to resolve a breach-of-contract claim premised on that Agreement. Since it is also undisputed that Plaintiff's present breach-of-contract claim is not presented as an appeal from an adverse ruling issued by an arbitrator or a hearing officer as the final step in the grievance process, Plaintiff is precluded from pursuing his claim in this Court. *Jones*, 72 N.M. at 236. Accordingly, Defendant is entitled to summary judgment as to Count II of the *Complaint*.

### D. Plaintiff's Retaliation Claim

In Count III of his *Complaint*, Plaintiff claims that, in contravention of the NMHRA, Defendant retaliated against him for complaining about age discrimination and for associating with employees who filed employment-related grievances against Defendant. (Doc. 1-1 at ¶ 29; Doc. 38 at p. 8-9).

#### 1. The Law Governing Plaintiff's Retaliation Claim

"The NMHRA makes it unlawful for [an] employer to retaliate against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the NMHRA." *Charles v. Regents of N.M. State Univ.*, 256 P.3d 29, 34 (N.M. Ct. App. 2011) (alteration omitted). "Retaliation can include threats, reprisals, or discrimination." *Id.* "In order to establish a claim of retaliation under the NMHRA, a plaintiff must demonstrate that (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between these two events." *Id.* at 33.

### 2. The Facts Upon Which Plaintiff Relies Do Not Support a Claim of Retaliation

As an initial matter, although Plaintiff argues that Defendant discriminated against him because he "complained a number of times of his mistreatment based on his age and that [Defendant] took actions against him based on his prior complaints," Plaintiff has failed to submit any evidence to support this assertion. Plaintiff's non-specific reference to his affidavit and exhibits do not suffice—neither the affidavit nor the exhibits identify any instance of Plaintiff having suffered an adverse employment consequence after having complained of age-related discrimination. (Doc. 38 at p. 8 (citing "Exhibit 1-Affidavit and exhibits associated with affidavit")). The Court does not consider this claim further.

In actuality, Plaintiff's retaliation claim is, as a matter of undisputed fact, premised on his association with "employees in the electrical department, who were seen as troublemakers, and employees in the instrumentation department, who were seen as prima donnas." (Doc. 38-1 at ¶ 52.) Plaintiff does not dispute that his "association" with the employees in these departments is the foundation of his retaliation claims pertaining to two promotions—one in 2010 and one in 2012 for which he was not selected. (Doc. 38-1 at ¶¶ 53-55.) As to other promotions—one in 2013, one in 2014, and another in 2016, in addition to his association employees of the

17

instrumentation and electrical departments (which undisputedly form a partial basis for Plaintiff's retaliation claims), Plaintiff argues that his retaliation claims are partially based, as well, on his participation in a 2013 New Mexico Environment Department (NNMED) board meeting. (Doc. 45 at p. 23; Doc. 38-1 at ¶¶ 58-61.) It is undisputed that the issue at the 2013 board meeting was whether maintenance experience should be accepted as "operational years of experience" as a qualification for a Level III operator position. (Doc. 30-4 at p. 20-22; Doc. 38-1 at ¶¶ 58-61.)

Plaintiff has failed to demonstrate that associating with employees in the electrical and instrumentation departments or participating in the NMED board meeting constitute "protected activity" under the NMHRA. The NMHRA prohibits discrimination based upon race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition. Section 28-1-7(A). It also prohibits an employer from retaliating against an employee for opposing any such unlawful discriminatory practice. Section 28-1-7(I)(2). Although Plaintiff argues that the employees with whom he associated had filed employment-related grievances against Defendant, there is no evidence in the record to show, or even to support an inference that, these grievances arose from alleged discrimination within the purview of Section 28-1-7(A). (Doc. 38 at p. 8-9.) By extension, the record is also devoid of evidence demonstrating, or supporting an inference that, Plaintiff opposed discrimination as prohibited by the NMHRA against his associates, such that his conduct would be protected by Section 28-1-7(I)(2). Likewise, there is no evidence that Plaintiff's participation in the 2013 board meeting, where the topic of concern was the technical qualifications applicable to a Level III operator position, pertained in any regard to activity prohibited by, or protected under, the NMHRA.

Plaintiff, having failed to demonstrate that he engaged in a protected activity, cannot sustain a claim under the NMHRA. *Charles*, 256 P.3d at 33 (N.M. Ct. App. 2011) ("In order to establish a claim of retaliation under the NMHRA, a plaintiff must demonstrate that . . . [he] engaged in a protected activity); *see Celotex Corp.*, 477 U.S. at 322 (stating that a failure of proof as to an essential element of a claim renders all other facts immaterial). Accordingly, Defendant is entitled to summary judgment as to Count III of the *Complaint*.

### III.    Conclusion

For the reasons stated herein, Defendant's *Motion for Summary Judgment* filed on September 14, 2017, (Doc. 30.) is **GRANTED** as to the relief requested therein.

Within fourteen (14) Days of this Order, Defendant may submit a supplemental brief addressing whether it is entitled to summary judgment in its favor as to Plaintiff's age-related hostile work environment claim. Should Plaintiff choose to respond, Plaintiff's supplemental response brief shall be filed no later than fourteen (14) days after Defendant's supplemental brief is filed. Defendant shall have ten (10) days to file a reply.

**IT IS SO ORDERED**.

                                            **Kirtan Khalsa**
                                    **United States Magistrate Judge**